**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GLORIA VALDEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:23-CV-02327-B** |
| | § | |
| **METHODIST HOSPITALS OF DALLAS** | § | |
| **D/B/A METHODIST HEALTH SYSTEM,** | § | |
| | § | |
| **Defendant.** | | |

## JURY INSTRUCTIONS

Defendant Methodist Hospitals of Dallas d/b/a Methodist Health System ("Methodist")

respectfully requests that the Court submit these Jury Instructions to the jury at trial in this case.

Dated: October 29, 2024

*/s/ Robin G. Shaughnessy*
Paul G. Nason
State Bar No. 00797926
pnason@lockelord.com
Robin G. Shaughnessy
State Bar No. 24012713
rshaughnessy@lockelord.com
Seth M. Roberts
State Bar No. 24051255
sroberts@lockelord.com
Aaron S. Nava
State Bar No. 24134375
aaron.nava@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopier)
**ATTORNEYS FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document has been sent via electronic mail, on this 29th day of October 2024, to all counsel of record.

*/s/ Robin G. Shaughnessy*
Robin G. Shaughnessy

MEMBERS OF THE JURY:

## I.      GENERAL INSTRUCTIONS

### *Introduction*

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you have heard and the other evidence submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. You have heard the evidence in this case. I will now instruct you on the law that you must apply.

### *Burden of Proof: Preponderance of the Evidence*

Plaintiff Gloria Valdez has the burden of proving her case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff has failed to prove any element of her claim by a preponderance of the evidence, then she may not recover on that claim.

### *Evidence*

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but

---

5th Cir. PJC 3.1.

5th Cir. PJC 2.16.

5th Cir. PJC 3.2.

simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

*Witnesses*

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

---

5th Cir. PJC 3.3.

5th Cir. PJC 3.4.

**Impeachment by Witness's Inconsistent Statements**

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

*Demonstrative Evidence*

Certain documents used during trial were illustrations. They were a party's or witness's description used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

*No Inference From Filing Suit*

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

---

5th Cir. PJC 2.11.

5th Cir. PJC 2.8.

5th Cir. PJC 3.6.

### *Objections and Arguments by Counsel*

During the course of the trial, you have heard counsel make objections to evidence.  It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  You should not draw any inference against an attorney or their client because the attorney has made objections.

Upon allowing testimony of other evidence to be introduced over the objection of any attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, or to the introduction of any other evidence, you must disregard the question entirely, and may draw no inference from the wording of it, or speculate as to what the witness would have said if the witness had been permitted to answer.

From time to time during the trial, it may have been necessary for me to talk with the attorneys out of your hearing, either by having a conference at the bench when you were present in the courtroom, or by calling a recess.  The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

### *Use of Notes Taken by Jurors*

Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be

unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

## II.    STIPULATED FACTS

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

The parties have agreed, or stipulated, to the following facts. This means that both sides agree that these are facts. You must therefore treat these facts as having been proved.

1.    Ms. Valdez began her employment with Methodist in September 2018 at The Liver Institute.

2.    In June 2021, Methodist hired Ms. Valdez to work at its Clinical Research Institute ("CRI") as a Clinical Research Coordinator.

3.    Jeny Rendon was Ms. Valdez's supervisor when Methodist hired Ms. Valdez to work in the Clinical Research Institute.

4.    After Jeny Rendon's employment with Methodist ended, Priyanka Acharya, then-Director of the CRI, served as the interim manager for approximately six months.

5.    Karen Castro was hired by Methodist to be the Clinical Trials Manager on April 5, 2022.

6.    Methodist maintains a progressive discipline policy, which involves a verbal warning, written warning, final written warning, and termination.

---

5th Cir. PJC 3.7.

5th Cir. PJC 2.3.

7.      Shortly after Ms. Castro was hired, Ms. Valdez announced to Ms. Castro that she was pregnant.

8.      On August 19, 2022, Ms. Valdez initiated the process to request a leave of absence for maternity leave through AbsenceOne, Methodist's third-party administrator for leaves of absence.

9.      Ms. Valdez did not give birth until October 31, 2022.

10.     On August 22, 2022, Ms. Castro met with Ms. Valdez to discuss her performance.

11.     On August 22, 2022, Ms. Castro received an automated notice from AbsenceOne that Ms. Valdez's last day of work before maternity leave would be October 12, 2022.

12.     On August 22, 2022, Ms. Valdez spoke to and then emailed a member of Methodist's Human Resources team expressing her concern that Ms. Castro was targeting her and attempting to terminate her employment.

13.     Following Ms. Valdez's conversation with HR on August 22, 2022, HR initiated an investigation, which involved speaking with Ms. Castro regarding Ms. Valdez's concerns.

14.     On September 15, 2022, Ms. Valdez received a final written warning.

15.     On September 20, 2022, Ms. Valdez called out of work and informed Ms. Castro and Ms. Acharya that she was going to the doctor.

16.     Ms. Valdez's doctor wrote Ms. Valdez out of work until September 26, 2022.

17.     On October 6, 2024, Ms. Castro prepared a Termination Disciplinary Action and recommended Ms. Valdez's termination.

18.     On October 12, 2022, Methodist delivered the Termination Disciplinary Action to Ms. Valdez and terminated her employment.

## III.   PLAINTIFF'S CLAIM FOR DISCRIMINATION BASED ON SEX OR PREGNANCY

Plaintiff Gloria Valdez claims Defendant Methodist Health System's act of terminating her employment was motivated by Plaintiff Gloria Valdez's sex or pregnancy.

The employer, Defendant Methodist Health System, denies Plaintiff Gloria Valdez's claims and contends that it terminated Plaintiff Gloria Valdez because of her repeated performance issues and failure to improve despite Defendant Methodist Health System providing Plaintiff Gloria Valdez extensive coaching, training, re-training, extended compliance deadlines, and progressive discipline.

It is unlawful for an employer to discriminate against an employee because of the employee's sex or because she is pregnant.  An employer may, however, terminate an employee for other reasons, good or bad, fair or unfair.  An employer does not have to make correct decisions, only non-discriminatory ones.

To prove unlawful discrimination, Plaintiff Gloria Valdez must prove by a preponderance of the evidence that:

1.   Defendant Methodist Health System terminated the employment of Plaintiff Gloria Valdez; and

2.   Defendant Methodist Health System's termination of Plaintiff Gloria Valdez's employment was motivated by her sex or pregnancy.

---

*Piper-Buckmire v. Medvance Inst.*, Civil Action No. H-08-0146., 2009 WL 1351047, at *6 (S.D. Tex. May 12, 2009) ("The role of this Court is not to substitute its judgment for that of the employer or second-guess an employer's decision merely because the Court may disagree with it.") (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones.")).

Plaintiff Gloria Valdez does not have to prove that unlawful discrimination was the only reason Defendant Methodist Health System terminated her employment.

You may now proceed to Question Number 1.

---

Adapted from 5th Cir. PJC 11.1.

**QUESTION NO. 1:**

  Was sex or pregnancy a motivating factor in Defendant Methodist Health System's decision to terminate the employment of Plaintiff Gloria Valdez?

  A "motivating factor" in an employment decision is a reason for making the decision at the time it was made.  There may be more than one motivating factor for an employment decision.

  Answer "Yes" or "No"

  Answer:  _____

---

Tex. PJC 107.6.

## IV.    PLAINTIFF'S CLAIM FOR UNLAWFUL RETALIATION

Plaintiff Gloria Valdez claims that she was retaliated against by Defendant Methodist Health System because she made a complaint of discrimination to Defendant Methodist Health System's Human Resources ("HR") department.

Defendant Methodist Health System denies Plaintiff Gloria Valdez's claims and contends that it terminated Plaintiff Gloria Valdez because of her repeated performance issues and failure to improve despite Defendant Methodist Health System providing Plaintiff Gloria Valdez extensive coaching, training, re-training, extended compliance deadlines, and progressive discipline.

To prove unlawful retaliation, Plaintiff Gloria Valdez must prove by a preponderance of the evidence that had she not made a complaint of discrimination to HR, Defendant Methodist Health System would not have terminated her employment when it did.  There may be more than one cause for an employment decision.  But you must find that Defendant Methodist Health System's decision to discipline and terminate Plaintiff Gloria Valdez would not have occurred in the absence of—but for—her making a complaint of discrimination to HR.

If you do not believe the reason Defendant Methodist Health System has given for terminating Plaintiff Gloria Valdez's employment, you may, but are not required to, infer that Defendant Methodist Health System would not have terminated her employment but for the fact that she made or filed a complaint of discrimination.

However, the closeness in timing between a protected activity and the termination of employment, without more, is not enough to prove retaliation.  Employers are sometimes forced

---

Adapted from 5th Cir. PJC 11.5.  *See also Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782–83 (Tex. 2018) (applying federal "but for" causation standard to TCHRA retaliation claim).

to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace. This is especially true for hospitals providing serious medical care to patients.

You may now proceed to Question Number 2.

---

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation…Employers are sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace. This is especially true for hospitals providing serious medical care to patients.").

**QUESTION NO. 2:**

Did Defendant Methodist Health System terminate Plaintiff Gloria Valdez's employment because she made a complaint of discrimination?

Answer "Yes" or "No"

Answer: _____

---

Adapted from Tex. PJC 107.9.

## V.     DAMAGES: DISCRIMINATION AND RETALIATION

If you found that Defendant Methodist Health System unlawfully discriminated or retaliated against Plaintiff Gloria Valdez, then you must determine whether it has caused Plaintiff Gloria Valdez damages and, if so, you must determine the amount of those damages. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Plaintiff Gloria Valdez has proved liability.

Plaintiff Gloria Valdez must prove her damages by a preponderance of the evidence.   Your award must be based on evidence and not on speculation or guesswork.  On the other hand, Plaintiff Gloria Valdez need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

There is no exact standard for determining actual damages. You are to determine an amount that will fairly compensate Plaintiff Gloria Valdez for the harm she has sustained.  Do not include as actual damages interest on wages or benefits.

In addition to actual damages, you may consider whether to award punitive damages. Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future.  The amount of any punitive damages award should bear a reasonable relationship to the harm caused Plaintiff Gloria Valdez.

---

Relevant language taken from 5th Cir. PJC 11.14.

Answer Question 3 only if you answered "Yes" to Questions 1 or 2. If you answered "No" to Questions 1 and 2, do not answer Question 3.

## QUESTION NO. 3:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff Gloria Valdez for her damages, if any, that resulted from Defendant Methodist Health System's unlawful discrimination or retaliation?

Do not include interest on any amount of damages you may find.

Do not include back pay or interest in calculating compensatory damages, if any.

Answer in dollars and cents for damages, if any.

Consider the following elements of damages, if any, and none other.

1.    Back pay.

"Back pay" is that amount of wages and employment benefits that Plaintiff Gloria Valdez would have earned from October 13, 2022 to February 18, 2023 if she had not been subjected to Defendant Methodist Health System's unlawful conduct less any wages, unemployment compensation benefits or workers' compensation benefits she received in the interim.

---

"In an employment case, the proper measure of damages for lost wages 'is the amount of money the employee would have earned had [she] not been terminated, less the sum [she] did earn after termination.'" *Basic Capital Mgmt., Inc. v. Phan*, No. 05-00-00147-CV, 2001 WL 893986, at \*7 (Tex. App.—Dallas Aug. 9, 2001, pet. denied) (quoting *Goodman v. Page*, 984 S.W.2d 299, 305 (Tex. App. —Fort Worth 1998, pet. denied)). "The claimant need not go into another line of work, accept a demotion, or take a demeaning position, but he forfeits his right to backpay if he refuses to accept or keep a job substantially equivalent to the one from which he was terminated." *Id.* (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231-32 (1982)). "[D]amages are 'settled and complete' and the back pay period ends, when the plaintiff begins earning more at his new job than he did at the job from which he was discharged." *Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1029 (5th Cir. 1992).

"Employment benefits" include sick-leave pay, vacation pay, profit-sharing benefits, stock options, pension fund benefits, housing or transportation subsidies, bonuses, monetary losses incurred as a result of the loss of health, life, dental, or similar insurance coverage.

Answer:  $_____

2.      Compensatory damages in the past, which include emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

Answer: $_____

3.      Compensatory damages in the future, which include economic losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

Answer: $_____

---

Tex. PJC 115.30.

Answer Question 4 only if you answered "Yes" to Questions 1 or 2. If you answered "No" to Questions 1 and 2, do not answer Question 4.

## QUESTION NO. 4:

Do you find by clear and convincing evidence that Defendant Methodist Health System engaged in the discriminatory practice that you have found in answer to Question No. 1 or 2 with malice or with reckless indifference to the right of Plaintiff Gloria Valdez to be free from such practices?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established. "Clear and convincing evidence" requires Plaintiff Gloria Valdez to satisfy a higher burden of proof than "preponderance of the evidence."

"Malice" means a specific intent by Defendant Methodist Health System to cause substantial injury or harm to Plaintiff Gloria Valdez.


Answer "Yes" or "No"


Answer: _____

---

Adapted from Tex. PJC 115.31.

Answer Question 5 only if you answered "Yes" to Question 4. If you answered "No" to Question 4, do not answer Question 5.

**<u>QUESTION NO. 5</u>:**

What sum of money, if any, if paid now in cash, should be assessed against Defendant Methodist Health System and awarded to Plaintiff Gloria Valdez as exemplary damages, if any, for the conduct found in response to Question No. 1 or Question No. 2?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are-

1. The nature of the wrong.

2. The character of the conduct involved.

3. The degree of culpability of Defendant Methodist Health System.

4. The situation and sensibilities of the parties concerned.

5. The extent to which such conduct offends a public sense of justice and propriety.

6. The net worth of Defendant Methodist Health System.


Answer in dollars and cents, if any.

Answer: $_____

---

Tex. PJC 115.38.

## VI.    PLAINTIFF'S CLAIM FOR INTERFERENCE WITH FMLA LEAVE

Plaintiff Gloria Valdez claims that she would not have been terminated by Defendant Methodist Health System but for her request to take leave under the Family and Medical Leave Act ("FMLA").

Defendant Methodist Health System denies Plaintiff Gloria Valdez's claims and contends that it terminated her employment because of her repeated performance issues and failure to improve despite Defendant Methodist Health System providing Plaintiff Gloria Valdez extensive coaching, training, re-training, extended compliance deadlines, and progressive discipline.

It is unlawful for an employer to retaliate against an employee for engaging in FMLA-protected activity.  FMLA-protected activity includes requesting or taking leave.

To prevail, Plaintiff Gloria Valdez must prove by a preponderance of the evidence that:

1.    Plaintiff Gloria Valdez engaged in FMLA-protected activity;

2.    Defendant Methodist Health System terminated Plaintiff Gloria Valdez's employment; and

3.    Defendant Methodist Health System would not have terminated Plaintiff Gloria Valdez but for her requesting to take FMLA leave.

Plaintiff Gloria Valdez does not have to prove that her FMLA-protected activity is the only reason Defendant Methodist Health System terminated her employment.  But Plaintiff Gloria Valdez must prove that she would not have been terminated in the absence of her FMLA-protected activity.

If you disbelieve the reason Defendant Methodist Health System has given for its termination decision, you may, but are not required to, infer that Defendant Methodist Health System would not have terminated Plaintiff Gloria Valdez but for her FMLA-protected activity.

---

Relevant language taken from 5th Cir. PJC 11.21.  Plaintiff Gloria Valdez asserts a cause of action arising under 29 U.S.C. § 2615.  Because she "is asserting that [Defendant Methodist

On the other hand, if Defendant Methodist Health System's decision to terminate Plaintiff Gloria Valdez' employment was made in good faith, you should not find for Plaintiff Gloria Valdez on this issue.

You may now proceed to Question Number 6.

---

Health System] fired her for taking (or attempting to take) FMLA-eligible leave before she ever went on such leave to begin with," Plaintiff Gloria Valdez must "show that [Defendant Methodist Health System] discriminated against her for exercising (or attempting to exercise) her FMLA rights." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 491 (5th Cir. 2018).. Plaintiff's claim is, in substance, an FLMA retaliation claim, and the Court should use 5th Cir. PJC 11.21, not PJC 11.19.

"For the purposes of an FMLA claim, what matters is not whether [an employer] was objectively correct about [an employee's] dishonesty, but whether it had a good-faith belief that dishonesty existed, and that such belief was the basis for the termination." *Tatum v. S. Co. Services, Inc.*, 930 F.3d 709, 715 (5th Cir. 2019) (quoting *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 492 (5th Cir. 2018)) (affirming summary judgment for defendant where plaintiff's employment was terminated one day after being informed that he was eligible for FMLA leave).

**<u>QUESTION NO. 6</u>:**

       Would Defendant Methodist Health System have terminated Plaintiff Gloria Valdez but for her request to take leave under the FMLA?

       Answer "Yes" or "No"

       Answer: _____

---

       Adapted from 5th Cir. PJC 11.21.

## VII.    DAMAGES: FMLA

If you found that Defendant Methodist Health System violated the FMLA, then you must determine whether those violations caused Plaintiff Gloria Valdez damages. If so, you must determine the amount. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Plaintiff Gloria Valdez has proved liability.

Plaintiff Gloria Valdez must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork.  On the other hand, Plaintiff Gloria Valdez need not prove the amount of her losses with mathematical precision, but only with as much certainty and accuracy as the circumstances permit.

You should consider the following elements of damages and no others: any wages, salary, employment benefits, or other compensation denied or lost because of Defendant Methodist Health System's violation of the FMLA, if any.

Wages, salary, and benefits include the amounts the evidence shows Plaintiff Gloria Valdez would have earned had she remained an employee of Defendant Methodist Health System from October 13, 2022 to February 18, 2023, including benefits such as life and health insurance, stock options, or contributions to retirement, minus the amounts of earnings and benefits, if any, Defendant Methodist Health System proves by a preponderance of the evidence Plaintiff Gloria Valdez received from employment during that time.

---

5th Cir. PJC 11.22.

Answer Question 7 only if you answered "Yes" to Question 6. If you answered "No" to Question 6, do not answer Question 7.

**QUESTION NO. 7:**

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Gloria Valdez for the damages, if any, you have found Defendant Methodist Health System caused her because of its violation of the FMLA?

Answer in dollars and cents for the following items and no others:

Wages, salary, employment benefits, or other compensation denied or lost from October 13, 2022 to February 18, 2023.

$_____

---

5th Cir. PJC 11.22.

## VIII.  DUTY TO DELIBERATE

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that

you must never disclose to anyone, not even to me, your numerical division on any question. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.


SIGNED _____, 2024.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

5th Cir. PJC 3.7.

## VERDICT OF THE JURY

We, the jury, have answered the foregoing questions in the manner indicated in this verdict form, and returned these answers into the Court as our verdict.

DATE _____

_____
JURY FOREPERSON