UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLORIA VALDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-2327-B |
| | § | |
| METHODIST HOSPITALS OF DALLAS | § | |
| D/B/A METHODIST HEALTH | § | |
| SYSTEM, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION & ORDER

Before the Court is Defendant Methodist Hospitals of Dallas d/b/a Methodist Health System ("Methodist")'s Motion for Summary Judgment (Doc. 22) and Methodist's Motion to Strike Statements in Plaintiff Gloria Valdez's Summary Judgment Response (Doc. 34). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment and **DENIES AS MOOT** the Motion to Strike. The Court **DISMISSES** Valdez's retaliation claim. Valdez's claims for sex discrimination and Family Medical Leave Act ("FMLA") interference will proceed to trial.

### I.

### BACKGROUND

This is an employment case. Valdez began working at Methodist's Liver Institute in September 2018. Doc. 24, Def.'s App'x, 4. In June 2021, Valdez transferred to the Clinical Research Institute ("CRI") as a Clinical Research Coordinator. *Id.* at 130–31. In this role, she coordinated clinical trials and worked with third-party clinical trial site monitors. *Id.* at 5–7, 24–25. Valdez was

also responsible for reading and understanding the protocols of each study, checking messages in Methodist's electronic medical records system each day, and timely reporting adverse events ("AEs") and serious adverse events ("SAEs"). *Id.* at 11–12, 67, 72, 88. AEs are negative health events experienced by patients participating in the studies. *Id.* at 67–68. SAEs are like AEs, but life-threatening. *Id.* at 85–86.

In April 2022, Karen Castro was hired as Valdez's new supervisor. *Id.* at 7, 13. The parties dispute when Castro learned Valdez was pregnant. Castro says she learned in April 2022, on Castro's first day when she met the team. *Id.* Castro says Valdez "pointed at her abdominal area" when she introduced herself, saying, "One thing about me is I'm pregnant." *Id.* Valdez testified that she did not tell Castro and her team she was pregnant until May 5, 2022. *Id.* at 14.

Valdez struggled to manage her trials and meet deadlines. Two third-party site monitors expressed concerns about her performance. Doc. 24, Def.'s App'x, 133–34; *id.* at 30–32. Methodist learned of performance issues with Valdez on May 2, 2022, when a third-party site monitor, James Lynch, emailed Castro about Valdez's failure to respond to emails. Doc. 23, Def.'s Br., 7; Doc. 24, Def.'s App'x, 133. Castro coached and attempted to retrain Valdez, but Valdez did not improve. Doc. 31, Pl.'s App'x, 134–35. After Castro received another third-party site monitor complaint about one of Valdez's studies, Castro met with Valdez on August 22. Doc. 31, Pl.'s App'x, 135–36. Castro told Valdez that she planned to take formal disciplinary steps. *Id.* at 136. After their meeting, Valdez, fearing that Castro planned to put her on a performance improvement plan ("PIP"), spoke to Elizabeth Parker in Human Resources about these concerns. *Id.* at 87.

On August 30, 2022, Castro issued Valdez a verbal warning—Valdez's first formal disciplinary action—for failing to timely report an AE from February 2022. Doc. 24, Def.'s App'x, 73; Doc. 31,

Pl.'s App'x, 184. Castro had just discovered the error when she issued the warning. Doc. 24, Def.'s App'x, 70. The next month, on September 9, Valdez received her first written warning for two additional compliance issues. Doc. 31, Pl.'s App'x, 184–85. Then, on September 13, Methodist learned that Valdez reported an SAE four days late. *Id.* at 168. As a result, Valdez received a "final written discipline" on September 15. *Id.* From September 20–25, Valdez stayed home from work under her doctor's orders because she had high blood pressure. Doc. 24, Def.'s App'x, 103–04. When she returned on September 26, Castro provided her a to-do list with tasks that Valdez had been assigned before she stayed home. *Id.* at 116–17, 168. Valdez did not meet the deadlines Castro provided, so Castro, believing Valdez would not improve further, recommended Valdez's termination on October 6. *Id.* at 155–56.

Valdez requested to take FMLA leave for the birth of her child through a third-party service, AbsenceOne, on August 19. Doc. 31, Pl.'s App'x, 19. She intended to request that her leave begin October 31, which was her due date, but the AbsenceOne report read October 13 as her first missed day. *Id.* Valdez did not clarify the dates with Methodist. *Id.* at 42.

As a result, Castro believed Valdez's last day of work before her leave was October 12. *Id.* at 137. On October 12, Methodist fired Valdez. *Id.* at 47.

Valdez asserts a claim for sex discrimination[1] under the Texas Commission on Human Rights Act ("TCHRA"). Doc. 1-E, Orig. Pet., ¶¶ 44–47. Also under the TCHRA, Valdez brings a claim against Methodist for unlawful retaliation. *Id.* ¶¶ 51–54. Finally, she sues Methodist for FMLA Interference. *Id.* at ¶¶ 55–57. Methodist moves for Summary Judgment on each of Valdez's claims

---

[1] Though Valdez brought separate claims for sex discrimination and sex discrimination—discriminatory discharge, under the TCHRA, both fall under Texas Labor Code § 21.051. Doc. 1-E, Orig. Pet., ¶¶ 44–50. Furthermore, both parties have treated the claims as one. *See generally* Doc. 22, Mot. Summ. J.; Doc. 30, Pl.'s Br. For these reasons, the Court construes Valdez's separate TCHRA sex discrimination claims as one.

and moves to strike many statements from Valdez's Response. *See* Doc. 22, Mot. Summ. J.; Doc. 34, Mot. Strike. The Court considers the motions below.

## II.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). On a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED R. CIV. P. 56(e)). Finally, the evidence plaintiff proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

## III.

## ANALYSIS

The Court finds Methodist's Summary Judgment Motion should be granted in part and denied in part. Methodist's Motion for Summary Judgment is **DENIED** as to Valdez's TCHRA sex discrimination claim and FMLA interference claim. The Court finds Methodist is entitled to summary judgment on Valdez's TCHRA retaliation claim and **DISMISSES** it **WITH PREJUDICE**.

A.  *There is a Genuine Issue of Material Fact on Valdez's Sex Discrimination Claim.*

First, the Court denies Methodist's Motion for Summary Judgment on Valdez's discrimination claim. Courts apply the *McDonnell Douglas* framework when, as here, plaintiffs rely on circumstantial evidence of discrimination. *See Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362 (5th Cir. 2013) (applying the Supreme Court's analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to an employment discrimination suit). Under *McDonnell Douglas*, to establish an employment discrimination claim, a plaintiff must first establish a prima facie case by a preponderance of the evidence. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). Once a plaintiff does so, "the burden of production shifts to the employer to

provide a legitimate, non-discriminatory reason for the action." *Haire*, 719 F.3d at 362–63. If the employer provides such a reason, the burden shifts back to the plaintiff, who for a TCHRA claim, must "show either: (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (quotations omitted). For a plaintiff to survive summary judgment, she must establish enough evidence that "a reasonable jury could . . . find that she has proven pretext by a preponderance of the evidence." *See Baumeister v. AIG Glob. Inv. Corp.*, 420 F. App'x 351, 354 (5th Cir. 2011); *Deines v. Tex. Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 280 (5th Cir. 1999). And under the TCHRA, a plaintiff can establish pretext by showing that the defendant's stated reason, "while true, was only one reason for its conduct and discrimination is another motivating factor." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).

1. <u>Valdez Established a Prima Facie Case</u>.

Valdez established a prima facie case of sex and pregnancy discrimination. Valdez sues under the TCHRA, which contains the same prima facie elements as sex discrimination under Title VII. *See Myers v. Crestone Int'l, LLC*, 121 F. App'x 25, 28 (5th Cir. 2005) ("Texas courts also look to federal law to guide their application of the TCHRA."). The TCHRA prohibits employers from firing an employee because of her sex. TEX. LABOR CODE ANN. § 21.051. And under Title VII, discrimination based on sex includes discrimination based on pregnancy. *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003). Under the *McDonnell Douglas* burden shifting framework, a plaintiff may prove a prima facie case of discrimination under the TCHRA or Title VII by showing that she "(1) is a member of

a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir.2001) (quotations and citations omitted).

Methodist argues only that Valdez cannot meet the fourth element of a prima facie case because "the record is devoid of any evidence Methodist treated a similarly situated employee outside Plaintiff's protected class more favorably." Doc. 23, Def.'s Br., 20. To show Valdez was treated less favorably than others similarly situated, she must show a comparator who "(1) held the same job or responsibilities; (2) shared the same supervisor or had their employment status determined by the same person; (3) have essentially comparable violation histories; and (4) have engaged in nearly identical conduct to the conduct that resulted" in Valdez's termination. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322 (5th Cir. 2021) (quotations omitted).

The Court finds Valdez has pointed to enough evidence on the record that a reasonable jury could find that a similarly situated, non-pregnant employee was treated more favorably than she was. Valdez identifies a non-pregnant colleague who was terminated after Valdez for "more egregious" conduct. Doc. 30, Pl.'s Br., 35–36. This other employee had "several issues with late SAE reporting." Doc. 26, Def.'s App'x, 8. Methodist issued a written warning to this employee on September 12, 2022. *Id.* at 5. The other employee with several SAE issues was fired over two months after receiving a written warning, on November 22. Doc. 26, Def.'s App'x, 4–5. Valdez also had an issue with late SAE reporting: she reported *one* SAE late, which Methodist argued was the "egregious violation" in which her "performance issues culminated." Doc. 23, Def.'s Br., 32; Doc. 24, Def.'s App'x, 86–88. Valdez received a written warning on September 15 and was fired less than a month later, on

October 12. Doc. 24, Def.'s App'x, 155, 95, 146. As the Court will explain further in its pretext analysis, this is enough for a reasonable jury to find Valdez met the fourth element of her prima facie case and that Methodist treated a similarly situated, non-pregnant employee more favorably than it treated Valdez.

      2.     <u>Methodist Produced a Legitimate, Non-discriminatory Reason for Firing Valdez</u>.

Methodist also met its burden to produce "a legitimate, non-discriminatory reason" for her firing. *See Haire*, 719 F.3d at 362–63. "[A] defendant only fails to meet [the] burden of production if it 'has failed to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Cole v. Quality Carriers, Inc.*, No. 23-30556, 2024 WL 937053, at *3 (5th Cir. Mar. 5, 2024) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis omitted).

Methodist produced evidence that Valdez's "termination was the final step in [her] lengthy and documented performance related discipline history." Doc. 23, Def.'s Br., 2. Methodist's first written disciplinary action lists disciplinary issues dating back to January 2022 and February 14, 2022. Doc. 31, Pl.'s App'x, 184. In her February incident, she failed to report an AE. *Id.* Methodist also produced evidence that Valdez failed to respond to emails from multiple third-party clinical trial site monitors, which was part of her job. Doc. 24, Def.'s App'x, 133–34, 30–31.

      3.     <u>There Is a Genuine Dispute that Methodist's Reason Was Pretextual</u>.

Valdez created a genuine dispute that Methodist's reason for firing her was pretextual. Because Methodist offered a legitimate, non-discriminatory reason for terminating Valdez, the *McDonnell Douglas* framework next requires Valdez to show that Methodist's stated reason for terminating her was a pretext for sex discrimination. *See Manning*, 332 F.3d at 882. To survive a

motion for summary judgment, a plaintiff must show that "a reasonable jury could . . . find that she has proven pretext by a preponderance of the evidence." *See Baumeister*, 420 F. App'x at 354; *Deines*, 164 F.3d at 280. A plaintiff can establish pretext under the TCHRA "by showing either (1) the reason stated by the employer was a pretext for discrimination [("pretext alternative")], or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor ('mixed motive')." *Reed*, 701 F.3d at 439. "The combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (quotations omitted). Under the TCHRA's "mixed motive" alternative, "a plaintiff need only show that [the protected status] was a motivating factor" in the employer's act. *Id.* at 440 (quotations omitted). If the plaintiff shows her "protected characteristic was a motivating factor, then the burden shifts to the employer to show that the adverse employment decision would have been made regardless of the characteristic." *Black*, 646 F.3d at 259 (quotations and alterations omitted).

Because Valdez sues under the TCHRA, she need only show that a reasonable jury could find that Methodist's stated reason for firing her, "while true, was only one reason for its conduct and discrimination is another motivating factor." *See Reed*, 701 F.3d at 439. Valdez has met this burden. Valdez provided evidence that a similarly situated colleague was fired later than Valdez for similar conduct and that Valdez was fired the day before Methodist believed her maternity leave was supposed to begin. *See generally* Doc. 26, Def.'s App'x; Doc. 31, Pl.'s App'x, 170; Doc. 24, Def.'s App'x, 163. Taken together, this evidence is enough to show a genuine issue that Methodist fired her when it did at least in part because she was pregnant.

Methodist argues that Valdez's "performance rapidly deteriorated, . . . culminat[ing] in an egregious violation of Methodist policy when she failed to timely report the SAE." Doc. 23, Def.'s Br., 29. Methodist cites one instance of this culminating event, *id.*, and this one unreported SAE is cited in Valdez's written disciplinary history. *See* Doc. 24, Def.'s App'x, 143–47; Doc. 31, Pl.'s App'x, 170–71. Methodist did not immediately fire Valdez for failing to report the SAE. Instead, it issued a warning, set new deadlines for her assigned tasks after she returned to work on September 26, and then decided her failure to meet the new deadlines was the last straw and fired her. *See* Doc. 23, Def.'s Br., 17–18; Doc. 24, Def.'s App'x, 155–56.

Meanwhile, Valdez's colleague had similar performance concerns by the time the colleague received a written warning on September 8. *See* Doc. 26, Def.'s App'x, 5–6. But Methodist waited until November 22 to fire her. *Id.* at 12–15. Like Valdez, by the time the colleague received her first written warning, she had missed deadlines and failed to properly follow instructions "in spite of multiple verbal coachings and warnings." *Id.* at 5. And like Valdez, by the time she received her first warning, the colleague had broken protocol in other ways; one of the colleague's breaches even "led to a prolonged interruption of treatment for one of [the colleague's] patients." *Id.* at 5–6. Also like Valdez, by the time the colleague received her final written discipline, she had an unreported SAE. *Id.* at 8. But unlike Valdez, the colleague had "continued non-compliance with SAE reporting." *Id.* And unlike Valdez, the colleague never noticed the missed SAEs and reported them. *See* Doc. 24, Def.'s App'x, 85. Instead, the colleague's manager noticed her continued SAE non-compliance and conducted a "retraining session" on October 14. Doc. 26, Def.'s App'x, 8. Methodist waited nearly two weeks after retraining the colleague about SAE reporting to issue her a final warning. *See id.* at 8. But Methodist issued a final warning to Valdez two days after Valdez reported an SAE four days

late. *See* Doc. 31, Pl.'s App'x, 168. And like Valdez, the colleague had an October 2022 audit for one of her studies. Doc. 26, Def.'s App'x, 8. Methodist cited the sponsor audit of Valdez's study as one reason it issued a final written warning to Valdez, explaining that her non-compliance could "lead to future repercussions to CRI." Doc. 31, Pl.'s App'x, 169. But Methodist did not terminate the colleague before the October audit even knowing that she had continued SAE reporting issues.

Methodist cited Valdez's missed SAE and failure to meet an extended deadline as the last straw. Doc. 23, Def.'s Br., 17–18. These, coupled with "numerous complaints from third parties about" Valdez, "multiple trainings, re-trainings, verbal coaching, and written disciplinary actions," made it "apparent to . . . Castro that [Valdez] was not going to improve her performance." *Id.* at 18. As a result, Castro recommended Valdez's termination on October 6, three days after Valdez missed her last extended deadline. Doc. 24, Def.'s App'x, 155–56. But before Methodist fired Valdez's colleague, it waited until the colleague's non-compliance was "escalated to the sponsor," jeopardizing the testing site where the colleague was working. Doc. 26, Def.'s App'x, 13.

Methodist fired Valdez on October 12, the day before Castro believed her parental leave was scheduled to start. Doc. 31, Pl.'s App'x, 170; Doc. 24, Def.'s App'x, 163. Valdez presented enough evidence to show, when taken together, that her pregnancy was a motivating factor in her termination. At the very least, a reasonable juror could find that Methodist fired Valdez sooner than it would have absent her pregnancy. Both Valdez and her colleague had documented, repeated disciplinary issues. But Methodist tolerated seemingly more disciplinary problems from Valdez's colleague for a longer period and waited for the colleague's non-compliance to get escalated to a sponsor. Based on the evidence before the Court, a reasonable jury could conclude that Methodist gave Valdez less time to improve so that it could fire her before her parental leave started. *See Watkins*

*v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021) (finding "a genuine dispute of material fact on the question of whether [an employer's] proffered reason for firing [the plaintiff]" was pretextual because the plaintiff's colleague, who was not in a protected class, was merely "counseled," and not fired, for committing the same offense as the plaintiff). While firing an employee on a quicker timeline than a similarly situated coworker may not always show disparate treatment, doing so to ensure the employee is fired the day before she goes on protected leave is sufficient here.

Because Valdez showed that her pregnancy was a motivating factor in Methodist's decision to terminate her, Methodist must show that it would have fired her regardless of her pregnancy. *See Black*, 646 F.3d at 259. Methodist did not attempt to make such a showing. *See generally* Doc. 23, Def.'s Br. The Court finds that there is a genuine dispute whether Methodist would have done so. Valdez has shown that Methodist tolerated Valdez's colleague's disciplinary issues for longer than it did Valdez's. And she showed Methodist allowed the colleague's non-compliance to escalate to more serious deviations than it did Valdez's non-compliance. Therefore, there is a genuine dispute whether Methodist would have fired Valdez on October 12, before her non-compliance escalated as much as her colleague's did, if she were not scheduled to start parental leave the next day. In other words, a reasonable jury could find by a preponderance of the evidence that if Valdez had not been pregnant, and Methodist did not think her parental leave began on October 13, she would not have been fired on October 12. *See Baumeister*, 420 F. App'x at 354.

B.  *Methodist is Entitled to Summary Judgment on Valdez's Retaliation Claim.*

Next, the Court grants Methodist's Motion for Summary Judgment on Valdez's TCHRA retaliation claim. As with discrimination claims, the *McDonnell Douglas* framework applies to retaliation claims that are based on circumstantial evidence. *Brown v. Wal-Mart Stores E., L.P.*, 969

F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020). "The substantive law governing Title VII and TCHRA retaliation claims is identical." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014).

> 1. Valdez Established a Prima Facie Case.

To establish a retaliation claim, a plaintiff must show that "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* (citations omitted). Methodist only argues Valdez failed to meet the causation element. Doc. 23, Def.'s Br., 27 n.14. A plaintiff can show causation at the prima facie case stage "simply by showing close enough timing between his protected activity and his adverse employment action."[2] *Garcia*, 938 F.3d at 243. For timing alone to establish a prima facie case, "the protected act and the adverse employment action must be very close in time." *Brown*, 969 F.3d at 578. The Fifth Circuit has held two months to be close enough in time to establish causation at the prima facie stage. *Id.*

The Court rejects Methodist's argument that Valdez fails to establish her prima facie case. *See* Doc. 23, Def.'s Br., 27. Valdez expressed her concerns about Castro to HR on August 22. Doc. 31, Pl.'s App'x, 87–88. *See Gorman*, 753 F.3d at 167 (noting an employee's complaint to the human resources department about allegedly discriminatory conduct was a protected activity). About seven weeks later, on October 12, 2022, Methodist fired Valdez. *Id.* at 151. The proximity in timing between Valdez's protected act–going to HR–and Valdez's termination, is less than two months.

---

[2] Methodist cites to *Wheat v. Florida Parish Juvenile Justice Commission*, 811 F.3d 702, 705 (5th Cir. 2016) for the notion that a plaintiff must prove "but-for" causation to prove a Title VII retaliation claim. *See* Doc. 23, Def.'s Br., 26–27. The *Wheat* court did note that a plaintiff must meet this standard to *prove* his retaliation claim, *Wheat*, 811 F.3d at 705–06, but at the prima facie stage, a showing of very close timing is enough. *See Brown*, 969 F.3d at 577.

Since the Fifth Circuit has found more time to be short enough to show causation at the prima facie stage, the Court finds that Valdez established a prima facie case. *See Brown*, 969 F.3d at 578.

    2.    <u>Methodist Produced a Legitimate, Non-retaliatory Reason for Terminating Valdez</u>.

Once a plaintiff "establishes a prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason" for its adverse action. *Garcia*, 938 F.3d at 241 (quotations omitted). For the same reasons Methodist showed a legitimate, non-discriminatory reason for terminating Valdez, the Court finds Methodist produced a legitimate, non-retaliatory reason for terminating Valdez: her poor performance. *See, e.g.*, Doc. 24, Def.'s App'x, 143–44, 146–47.

    3.    <u>Valdez Failed to Establish that Methodist's Non-retaliatory Reason Was Pretextual</u>.

If an employer meets the burden of producing "a legitimate, non-discriminatory reason for" its adverse action, then the burden shifts back to the plaintiff to show the employer's reason is pretextual. *Brown*, 969 F.3d at 577.

"[T]o survive a motion for summary judgment, a plaintiff must show a 'conflict in substantial evidence' on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Id.* (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)); *see also Apache Corp. v. Davis*, 627 S.W.3d 324, 325 (Tex. 2021). Valdez cannot show that a reasonable jury could find that Methodist's reason for terminating her was pretext for retaliation. "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Brown*, 969 F.3d at 577 (quoting *Musser*, 944 .3d at 561). "[A]ny evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action" can prove pretext. *Id.* at 578.

Proximity in time between a plaintiff's protected activity is relevant to but not sufficient to alone prove pretext. *See id.* at 579.

Valdez failed to produce any evidence suggesting her termination was retaliatory. Thus, she did not show a "conflict in substantial evidence" that Methodist would not have terminated her but for her complaint to HR. Establishing that seven weeks elapsed between Valdez's complaint to HR and her termination is not enough to show pretext. *See* Doc. 31, Pl.'s App'x, 87–88 (noting she complained on August 22); *id.* at 151 (recalling Methodist fired Valdez on October 12); *see also Musser*, 944 F.3d at 564 ("Temporal proximity alone is insufficient to survive summary judgment at the pretext stage in the absence of other significant evidence of pretext.") (internal quotations omitted). The other evidence precludes a reasonable jury from finding that Methodist fired Valdez *because* she spoke to HR. Indeed, there is evidence that Methodist was already considering terminating her. Valdez testified in her deposition that she complained to HR only *after* she understood Castro to say she was placing Valdez on a PIP. *Id.* at 20; *see* Doc. 23, Def.'s Br., 11–12. Valdez interpreted that Castro would be placing her on a PIP in their August 22 conversation, *before* Valdez spoke to HR. Doc. 31, Pl.'s App'x, 20.

Furthermore, on August 12—ten days before Valdez spoke to HR—Castro emailed Elizabeth Parker in HR to "request . . . guidance on corrective actions for employees following multiple verbal warnings and written communications, per [Methodist's] guidelines" and asked Parker for "any tools [Parker] may have to facilitate this process." Doc. 31, Pl.'s App'x, 197. Castro was referring to Valdez and another employee. *Id.* at 135.

The Court thus finds a reasonable jury could not see a "conflict in substantial evidence" that Methodist would not have terminated her but for her complaint to HR. A reasonable jury could not

find that Methodist's reason was pretext for retaliation because of her complaint. Therefore, the Court grants Methodist's Motion for Summary Judgment on Valdez's retaliation claim and dismisses the claim with prejudice.

C. *There is a Genuine Dispute of Material Fact on Valdez's FMLA Interference Claim.*

Finally, there is a genuine issue of material fact whether Methodist interfered with Valdez's right to FMLA leave. The FMLA requires covered employers to provide eligible employees 12 weeks of leave per year for various reasons, including the birth of the employee's child. 29 U.S.C. § 2612(a)(1)(A). An employer may not interfere with an employee's rights under the FMLA. *Id.* § 2615(a)(1). To establish a prima facie FMLA interference case, a plaintiff must show: "(1) [she] was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [she] was entitled to leave; (4) [she] gave proper notice of her intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which the FMLA entitled [her]." *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019) (citation omitted). Even if a plaintiff establishes a prima facie case, a defendant can obtain summary judgment if it "articulates a legitimate non-discriminatory reason for the employment action at issue." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). If the defendant does so, then to overcome summary judgment, "the plaintiff must raise an issue of material fact that the employer's proffered reason was pretextual." *Id.*

A reasonable jury could find Valdez established a prima facie case of FMLA interference. Methodist does not dispute that Valdez met the first four elements of her claim. *See* Doc. 23, Def.'s Br., 31; Doc. 33, Def.'s Reply, 19. So the Court will only address whether Valdez established the fifth element: whether Methodist denied her benefits to which the FMLA entitled her. In *Caldwell*, the Fifth Circuit found there was a genuine issue of material fact that the defendant's proffered

reason for firing the plaintiff was pretextual. 850 F.3d at 246. The plaintiff had requested FMLA leave before he was fired. *Id.* at 245. Therefore, because he would have been entitled to take FMLA leave absent his firing, and there was a genuine dispute of material fact that his firing was illegal, he raised a genuine issue of material fact as to FMLA interference. *See id.* at 245–46. As discussed in Part A, Valdez raised a genuine issue of material fact whether her firing was discriminatory. If her firing was discriminatory, then by firing her before she could take FMLA, Methodist deprived her of an FMLA benefit to which she was entitled. Therefore, Valdez raised a genuine issue of material fact as to FMLA interference.

Methodist argues that Valdez cannot establish a prima facie case because she fails to address Methodist's argument that its employees "went out of their way to ensure [Valdez's] first period of pregnancy-related leave was protected under the FMLA." Doc. 33, Def.'s Reply, 19. This first period of pregnancy-related leave occurred when Valdez was out from September 20–26 for high blood pressure. Doc. 24, Def.'s App'x, 103–04. But Valdez sued Methodist for firing her in October, right before her FMLA-protected maternity leave was supposed to begin. Methodist does not address whether firing Valdez denied her FMLA leave to which she was entitled. *See* Doc. 33, Def.'s Reply, 19–20; Doc. 23, Def.'s Br., 31–32.

Because Methodist offers Valdez's performance issues as the legitimate, nondiscriminatory reason for firing her, which the Court detailed above, Valdez must now raise an issue of material fact that Methodist's reason was pretextual. *See Caldwell*, 850 F.3d at 245. Valdez has met this burden. The Court has already addressed that firing Valdez the day before her FMLA leave was supposed to start, coupled with Methodist's delayed firing of a colleague with more serious non-compliance, is enough for a reasonable jury to find pretext. For the same reasons, Valdez offered

enough for a reasonable jury to find that Methodist fired Valdez because she was about to take her FMLA-protected parental leave. Methodist waited far longer and for more serious offenses to arise before firing Valdez's colleague. A reasonable jury could find that because Valdez planned to take FMLA leave starting October 13, Methodist decided not to apply the same leniency to Valdez. *See Arban v. W. Pub. Corp.*, 345 F.3d 390, 402 (6th Cir. 2003) ("[T]he timing of this decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware).") (quoting *Kohls v. Beverly Enters. Wis.*, 259 F.3d 799, 806 (7th Cir. 2001)). Therefore, Valdez raised an issue that Methodist's reason for firing her was a pretext to prevent her from taking FMLA leave. The Court denies Methodist's Motion on the FMLA claim.

D. *The Motion to Strike is Denied as Moot.*

Finally, the Court need not consider Methodist's Motion to Strike. Methodist moved to strike 26 statements that Valdez made in her response. *See generally* Doc. 34, Mot. Strike. The Court did not consider these statements to rule on Methodist's Motion for Summary Judgment. Accordingly, Methodist's Motion to Strike is **DENIED AS MOOT**.

### IV.

### CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment (Doc. 22). The Court **DISMISSES** Valdez's retaliation claim **WITH PREJUDICE**. Valdez's claims for discrimination and Family Medical Leave Act ("FMLA") remain. Finally, the Court **DENIES AS MOOT** the Motion to Strike (Doc. 34).

SO ORDERED.

SIGNED: October 31, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE